Michael B. Keating, Foley, Hoag & Eliot, Boston, Mass., for plaintiff.

Joseph Lena, Asst. U. S. Atty., for defendant.

**Richard E. BENDER, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. A. No. 67–449–C.

United States District Court
D. Massachusetts.

April 11, 1968.

OPINION

CAFFREY, District Judge.

This matter came on for hearing on remand from the Court of Appeals, 1 Cir., 387 F.2d 628, on the basis of a petition filed under 28 U.S.C.A. sec. 2255. The crux of the matter and the only issue on which petitioner offered evidence consists of a contention by petitioner that he was "tricked" by one of his attorneys into executing and filing a stipulation during the criminal trial, on the understanding that in exchange therefor he would be granted probation if found guilty by the jury. It is claimed that

the alleged trickery violated his rights to due process of law under the Fifth Amendment and other constitutionally guaranteed rights of the petitioner.

Petitioner Bender was indicted on December 7, 1965, in a one-count indictment which charged him with violation of 18 U.S.C.A. sec. 876, willfully and knowingly depositing in an authorized depository for mail matter an envelope and letter which contained a threat to injure the person of the addressee. He was tried before another judge of this court and a jury on September 13, 15 and 16, 1966, and upon being found guilty was sentenced on October 5, 1966 to the custody of the Attorney General for study pursuant to the provisions of 18 U.S.C.A. 4208(b). Thereafter, on January 10, 1967, he was sentenced to the custody of the Attorney General for a period of three years, pursuant to the provisions of 18 U.S.C.A. 4208(a) (2). He is presently serving this sentence.

The stipulation, the execution of which is under attack herein, was introduced into evidence at the trial as Govt. Exhibit #1. It reads as follows:

"For the purposes of the above case it is hereby stipulated and agreed as follows:

1. That the letter and envelope attached hereto and marked 'A' and 'B' respectively were written by the defendant, Richard Eugene Bender, on July 28, 1965.

2. That the material attached hereto and marked 'C' is an accurate copy of the letter and envelope attached hereto and marked 'A' and 'B.'

3. That on or about July 29, 1965, the defendant, Richard Eugene Bender, deposited the letter and envelope attached hereto and marked 'A' and 'B' respectively in an authorized depository for mail matter to be sent and delivered by the Post Office Department, knowing that he was so doing."

The effect of this stipulation was to establish two of the three essential elements of the Government's case, leaving the Government to its proof of the one remaining essential element, i. e., that the letter in question was "threatening" within the meaning of 18 U.S.C.A. sec. 876.

At the hearing on this 2255 petition, Michael B. Keating, Esq., the third attorney appointed by this court to represent Bender since and in connection with his indictment and related litigation, called as witnesses Norman A. Hubley, Esq., the first of Bender's court-appointed counsel, who represented him at the criminal trial and until shortly before he was sentenced; Mrs. Frances C. Kissell, the Assistant United States Attorney who prosecuted the case; and the petitioner. Daniel B. Bickford, Esq., the second of Bender's court-appointed counsel, who represented him on the occasion of the imposition of sentence, was present within the bar enclosure during the entire hearing but was not called as a witness. After hearing, I find and rule as follows:

Norman A. Hubley is an experienced practicing attorney who served approximately four years as an Assistant United States Attorney in the office of the United States Attorney for the District of Massachusetts, and thereafter entered private practice in Boston with one of the city's leading law firms in which he is now a partner. Upon being appointed as counsel for Bender, Mr. Hubley obtained a copy of the indictment, examined it, thereafter interviewed Bender with reference to the matter, and conferred with him on several occasions prior to the trial. On the basis of his not inconsiderable experience as a prosecutor and trial attorney, and in the light of an admission made to him by Bender that Bender had in fact written and mailed the letter in question, Mr. Hubley decided that the best strategy to be pursued in the interests of the defendant in this particular trial was to maneuver the Assistant United States Attorney into requesting Bender to stipulate to the writing and mailing of the letter if this could be done. Mr. Hubley's reasons for taking this tack

were that to do so would remove from the case the jury impact of several live witnesses, particularly a handwriting expert whose testimony Mr. Hubley believed would establish the fact already conceded to him by Bender, namely, that Bender had written the letter, and whose testimony, coupled with the illustrative charts, etc. normally used by handwriting experts, would, in Mr. Hubley's opinion, favorably impress a jury. The stipulation would also eliminate as live witnesses the addressee of the letter and his secretary who had actually received the letter from the postman. In Mr. Hubley's opinion, this would tend to "low key" the Government's presentation of its case against Bender. Mr. Hubley felt that the elimination of these live witnesses from the trial would result in a presentation by the Government to the jury of a caliber he considered to be "low key," with the result that the jury would be free to concentrate its attention on the remaining issue, namely, was the letter a threatening letter? Mr. Hubley felt that if the defendant portrayed himself as a "good guy" who conceded to the jury the writing and mailing, the jury would evaluate the defendant as being a candid type person and would consequently be more likely to believe defense arguments that the letter was not threatening and was not intended by Bender to be threatening. Mr. Hubley also felt that if the Government was obliged to bring a handwriting expert from Washington to testify, the jury might get the impression that the Government considered the case a very serious matter, with the concomitant risk from Bender's point of view that the jury might also consider it a more serious case than they would were it prosecuted in a "low key" fashion.

I find that Mr. Hubley explained this strategy to Bender on several occasions and that he discussed it with him thoroughly. I believe Mr. Hubley's testimony that, if possible, he over-explained it to Bender. I further find that prior to discussing this strategy Mr. Hubley explained to Bender what the essential elements of the Government's case were and that he explained to Bender that the Government was under a legal obligation to prove those essential elements beyond a reasonable doubt. He likewise explained to Bender the nature and operation of a stipulation in a trial and advised him that he was under absolutely no legal obligation whatsoever to stipulate to anything if he elected not to do so and that he had every legal right to put the Government to its proof. Mr. Hubley further explained that whether or not to stipulate was a matter within Bender's own personal control and that whether or not to stipulate was a matter for Bender to decide in light of Mr. Hubley's explanation of the reasons why he felt that it was good trial strategy to do so.

Mr. Hubley testified that at no time did he discuss with any representative of the United States Government, in the United States Attorney's office or in any other agency, either the merits of the Government's evidence against Bender or any possible recommendation by the prosecutor to the trial judge in the event of a guilty plea or a conviction after a trial by jury. He further testified and I find that he did not recommend the execution of the stipulation solely to eliminate the introduction into evidence of a statement given by Bender to the FBI as to which a motion to suppress was then pending. He did have in mind, however, that elimination of the FBI statement by the stipulation would carry certain other collateral benefits to Bender's position in the case, since Mr. Hubley knew that it contained Bender's own admission that he wrote and sent the letter and it also contained an admission by Bender that the statements he made in his letter were threatening. Mr. Hubley testified that over and above his awareness of the fact that Bender had admitted to him that he wrote and mailed the letter, he had in mind the fact that the envelope in which the letter was delivered to the secretary of the addressee in Detroit, Michigan, bore the return address of Bender at Orange, Massachusetts, as well as a Post Office postmark from Orange, Massachusetts, where Bender was then living.

Mr. Hubley testified and I find that after a full explanation by him to Bender of all his constitutional rights and all of the reasonably alternative strategems available, Bender agreed to follow the strategy that in fact was used by Mr. Hubley in defending Bender at the trial.

Finally, Mr. Hubley testified that the reason he withdrew from the case after the conviction but prior to the sentencing was because he received from Bender a letter that contained implied threats to him and explicit threats to court personnel connected with the case, and that after consultation with one of his law partners he decided that his obligation to the public—particularly the other persons in the courtroom—to protect them from potential harm was a heavier obligation than his obligation to Bender. In reaching this conclusion Mr. Hubley had in mind that he had had conversations with Bender about hunting rifles and shotguns and Bender's familiarity with the use of such weapons, and that shortly before his receipt of this letter a crazed sniper had shot twenty people on the University of Texas campus. These matters, plus the fact that Mr. Hubley knew that the trial judge had ordered Bender to undergo psychiatric tests to determine whether he had the mental competence to assist his counsel in his own defense, left Mr. Hubley with enough uncertainty and doubts as to whether Bender would attempt to carry out the threats that he felt he could not in good conscience stand up in court and argue for a non-jail disposition of the criminal case.

After Mr. Hubley's withdrawal from the case, Attorney Daniel B. Bickford was appointed to represent Bender at the time of sentencing. No issue as to Mr. Bickford's representation of Bender was raised at this hearing. Bender's counsel attempted to raise for the first time, in a post-trial brief, a question as to Bickford's ability to properly represent Bender at sentencing. This contention must be rejected because it has no factual basis. Mr. Bickford was present at the hearing under subpoena, but despite the fact that he was the person best qualified to testify as to what information had been given to him by Mr. Hubley prior to the sentencing he was not called as a witness. The only evidence relating to this point is Mr. Hubley's testimony to the effect that he believed he brought Mr. Bickford up to date as to all the matters that had transpired in the case prior to Mr. Bickford's appointment, including the events which led to Mr. Hubley's withdrawal.

It might be noted, in connection with the scope of this 2255 hearing, that as recommended in Desmond v. United States, 333 F.2d 378, 382 (1st Cir., 1964), the following colloquy took place between the petitioner and the Court at the end of petitioner's testimony as a rebuttal witness:

"THE COURT: While you are there, is there anything else you want to call to my attention that Mr. Keating has failed to call to my attention?

MR. BENDER: Yes. I have a Supreme Court decision which I discovered is against the introduction of evidence during a jury session of a trial, due to the lapse of time. I found in Federal Rule No. 5 that this is inadmissible as evidence and my stipulation would fit into it.

THE COURT: You do not know the name of the case, offhand?

MR. BENDER: No. I have all those things there. I don't know the name of the case.

THE COURT: That is a legal matter. Is there anything factual you want to call my attention to?

MR. BENDER: The only factual thing I would like to call your attention to is the fact that the FBI statement was inadmissible, it could not be used against me. I did not know that at the time I was in court.

THE COURT: All right. Thank you."

Former Assistant United States Attorney Frances C. Kissell, who prose-

cuted the criminal case, testified substantially to the same effect as Mr. Hubley. She said that she had interviewed by telephone both the addressee of the letter and his secretary in Detroit, Michigan, and that both were available to come to Boston to testify, and that absent the stipulation she would have called both these witnesses plus an FBI handwriting expert from Washington and the FBI agent who took the statement from Bender. She categorically denied a statement made by Bender to the effect that she told him outside the courtroom that she was desirous of dismissing the charges against him and testified that their conversation on that occasion was actually limited to the subject of gasoline mileage of their respective automobiles.

Bender testified and substantially corroborated Mrs. Kissell. He complimented her on her unusually good memory of the conversation about gasoline mileage, and in effect withdrew the claim (suggested by his counsel's cross-examination of Mr. Hubley) that she had told him that she was desirous of dropping the charges. He agreed with all of Mr. Hubley's testimony save his denial that the stipulation was executed on a "give and take" basis. I do not believe Bender's testimony that the reason he stipulated was primarily because the original of the letter had become illegible, nor do I believe his testimony that an additional reason why he stipulated was to save the Government money because of his great concern as a taxpayer about the high level of Government expenditures, and I reject his testimony that Mr. Hubley told him that if he executed the stipulation he would be placed on probation and not go to jail. I find that Mr. Hubley made no representation to Bender as to what sentence would be imposed by the trial judge if he were found guilty, and I further find that Mr. Hubley made no statement to Bender about the use of the stipulation or otherwise which afforded any rational basis whatsoever for Bender's drawing the inference that the execution of the stipulation was a *quid pro quo* for a non-jail disposition of his case.

I find that Bender executed the stipulation because he knew that he had written and mailed the letter in question, because he believed that the Government would be able to prove his writing through a handwriting expert, would be able to prove the mailing and receipt by the addressee by the physical evidence of the envelope and postmark, coupled with the testimony of the two witnesses from Detroit, and because he believed, in the light of Mr. Hubley's explanation of all the possible alternatives open to him at the trial, that his so doing would be the best available strategy to follow. I do not credit his statement that he did not understand the nature and purpose of the stipulation. On the contrary, I find that Bender did understand the nature and effect of his executing and having his counsel file the stipulation, and I find that he knew, on the basis of Mr. Hubley's explanation to him, that the consequence of his executing the stipulation would be to obviate the necessity of the Government's producing evidence to establish the facts stipulated to. I further find that his action in agreeing to the execution of the stipulation was completely voluntary.

In summary, I believe *in toto* the testimony of Attorneys Hubley and Kissell. I find that the petitioner was fairly and fully advised by his court-appointed counsel, Mr. Hubley, of all his constitutional and other legal rights, that he had all available courses of conduct explained to him prior to and during his trial, and that he had a fair and full opportunity to discuss with his competent and experienced trial counsel whether or not to stand trial, whether or not to plead guilty, and whether or not to stipulate.

I rule that no constitutional or statutory right of this petitioner was violated prior to or during the course of his trial, as claimed in his 2255 petition. Bender's position in this litigation falls squarely within the type situation described by Chief Judge Aldrich, speaking for the Court of Appeals for this Circuit, in White v. Hancock, 355 F.2d 262, at 264, n. 2 (1 Cir., 1966). Cf. Kinney v. United

States, 177 F.2d 895, 897 (10th Cir., 1949), cert. denied 339 U.S. 922, 70 S.Ct. 610, 94 L.Ed. 1345 (1950).

The Court wishes to thank Michael B. Keating, Esq., for his conscientious and highly professional representation of Bender as uncompensated court-appointed counsel in this matter.

An order will be entered dismissing the petition.